**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MACEE ANTHONY PASSE, | : | Civil No.: 09-1209 (NLH) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| WARDEN JEFF GRONDOLSKY, | : | |
| Respondent. | : | |

**APPEARANCES:**

    MACEE ANTHONY PASSE, Petitioner <u>Pro</u> <u>Se</u>
    #04267-088
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640

    ELIZABETH ANN PASCAL, AUSA
    U.S. DEPARTMENT OF JUSTICE
    401 Market Street, P.O. Box 2098
    Camden, New Jersey 08101
    Counsel for Respondent

**HILLMAN**, District Judge

On or about March 17, 2009, petitioner, Macee Anthony Passe ("Passe"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges sanctions imposed as the result of prison disciplinary infractions. Passe asks the Court to expunge the disciplinary sanctions imposed against petitioner. The named respondent is FCI Fort Dix Warden Jeff Grondolsky. Respondent Grondolsky answered the petition on

August 28, 2009, and provided a copy of the pertinent administrative record. (Docket Entry No. 7). On September 24, 2009, Passe filed a traverse or objections to the Warden's answer. (Docket Entry No. 8).

## I. BACKGROUND

Passe challenges a January 2005 prison disciplinary finding, which resulted in the loss of 87 days good conduct time ("GCT") and nine (9) years loss of telephone and visitation privileges. Passe seeks to have the telephone and visitation privileges restored.

Passe is presently serving a 200-month prison sentence imposed by the United States District Court for the Western District of Virginia, on November 24, 1997, on his conviction for conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). On that same date, Passe was sentenced to an additional 24-month prison term for violation of supervised release. Passe's projected release date is January 16, 2013, assuming he receives all good conduct time ("GCT") available to him under 18 U.S.C. § 3624(b). (See Declaration of Tara Moran, ¶ 4 and Exhibit 1).

The incident at issue in this habeas petition occurred on January 20, 2005. Officer N. Thornton discovered two cell phones concealed in Passe's secure wall locker during a search. Both

cell phones had been activated and used.  Thornton also discovered ten books of 37-cent U.S. postage stamps and 20 loose stamps, valued at $81.40.  (See Moran Decl., ¶ 4 and Ex. 3, Incident Report #1304166, Part I).  Thornton prepared an incident report that same day, charging Passe with the prohibited acts of Use of the Telephone for Abuses Other Than Criminal Activity, Code 297, and Possession of Anything Not Authorized, Code 305.  (Id.).

On January 21, 2005, Lieutenant Fields interviewed Passe and conducted an investigation of the incident charges.  (Id., Ex. 3, Part III).  Passe was given a copy of the Incident Report and was advised of his rights.  Passe declined to make a statement to Lt. Fields at that time.  Lt. Fields found the charges valid and referred the matter to the Unit Disciplinary Committee ("UDC").  (Id., Ex. 3, Part I, Boxes 14-16, and Part III, Boxes 23-27).

The UDC held a hearing on the charges on January 25, 2005.  Due to the severity of the offenses charged, the UDC referred the matter to a Discipline Hearing Officer ("DHO") for disposition.  The UDC informed Passe of his rights and gave him Notice of Hearing before the DHO.  Passe signed the notice and indicated that he did not wish to have a staff representative at the hearing or to present witnesses.  (Id., Ex. 3, Part II, Box 18, and Ex. 4).

The DHO hearing was conducted the next day, on January 26, 2005. Passe admitted the Incident Report was true, and declined to present witnesses or documentary evidence. He did give a statement to the DHO, which was considered by the DHO in making his decision. (Id., Exs. 3, 4).

The DHO found that Passe did commit the prohibited acts as charged, namely, Use of the Telephone for Abuses Other Than Criminal Activity (Code 297) and Possession of Anything Not Authorized (Code 305). The DHO relied on the written statement of the reporting officer, Officer Thornton, in Part I of the Incident Report, as well as Lt. Fields's investigation in Part III of the Incident Report. The DHO also relied on a photograph of the cell phones discovered in Passe's locker. Specifically, the DHO commented that the photograph supported the officer's written report because it "clearly depict[ed] a [sic] two cellular telephones." (Id., Ex. 3, Part V). The DHO sanctioned Passe, as follows, for the Code 297 violation: 30 days disciplinary segregation; disallowance of 27 days good conduct time ("GCT"); forfeiture of 60 days non-vested GCT; 9-year loss of telephone privileges; and 9-year loss of visitation privileges. For the Code 305 violation, the DHO sanctioned Passe to 15 days disciplinary segregation; disallowance of 13 days GCT; forfeiture of 13 days non-vested GCT; 9-year loss of telephone

privileges; and 9-year loss of visitation privileges.  (<u>Id</u>., Ex. 3, Part VI).

The Government confirms that Passe has exhausted his administrative remedies with respect to his claim in this petition for loss of telephone and visitation privileges for nine years.

Passe filed this habeas petition on or about March 17, 2009. He also filed a traverse or reply to the Government's Answer, on September 25, 2009.  Passe claims that the sanctions received on the Code 297 violation, namely, 9-year loss of visitation and telephone privileges is harsher than the sanctions now imposed on the reclassified Code 297 violation, which has been reclassified as a more serious in nature 100-series incident.  Indeed, he argues that there is no specific time period prescribed for the loss of privileges sanctioned in this case.  In this regard, Passe asserts that the DHO's decision was arbitrary and capricious, in violation of his right to equal protection, and that the DHO acted outside the scope of his authority in sanctioning Passe to nine years loss of telephone and visitation privileges.  Finally, Passe argues that the Incident Report does not state that Passe had used the cell phones in a criminal nature.  He contends that there is no mention of him having been caught using the cell phones, circumventing the institution phone system, or speaking in code.

In its Answer to the Petition, filed on August 28, 2009, the Government contends that the petition should be dismissed for lack of subject matter jurisdiction because Passe is not challenging the fact or duration of his confinement.  In particular, the Government notes that Passe is challenging only the 9-year loss of telephone and visitation privileges, not the loss of GCT.  Alternatively, the Government argues that Passe received all the procedural protections due him under the Due Process Clause, and that the DHO's decision is supported by the greater weight of evidence.

## II.   DISCUSSION

A.   Standard of Review

Passe seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[1]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case,

referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a "High" category offense and the UDC does not have the authority to disallow good conduct time. Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17. These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. § 541.17(g). A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days. Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners

9

retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, the record shows that Passe was afforded all the procedural rights to which he was entitled under Wolff.  Indeed, Passe does not argue that his procedural due process rights were violated in this regard.  Accordingly, this Court concludes that Passe has not demonstrated any denial of due process to warrant a grant of habeas relief.

2.  *There Was Sufficient Evidence to Support the Charge*

Passe argues that there was inadequate evidence to support a finding that he violated Code 297, because he was not caught using the cell phones or circumventing the institutional telephone system, and that he was not conducting any criminal activity.  Passe does not appear to challenge the DHO's finding regarding the Code 305 violation involving possession of an excessive amount of postage stamps.

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v.

<u>Kann</u>, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

<u>Hill</u>, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  <u>Id.</u> at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the investigation and reporting officer's description of the incident as set forth in the Incident Report, which detailed the discovery of the two cell phones and the excessive amount of stamps found in Passe's locker drawer.  Specifically, the DHO relied on the photograph of the cell phones, Passe's own admission that the Incident Report was true, and Officer Thornton's statement that the cell phones were inspected and found to have been previously activated and used.

11

Further, this Court notes that a Code 297 violation includes circumventing telephone monitoring procedures. See BOP Program Statement 5270.07, Inmate Discipline. Here, the evidence relied upon by the DHO shows that Passe had hidden the cell phones and that they both had been activated and used. Thus, the mere act of possessing and using the cell phones in prison, in and of itself, circumvents the Inmate Telephone System ("ITS"), and is sufficient to satisfy the evidentiary standard required by due process in prison disciplinary proceedings.

Consequently, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457. Passe has not proffered any evidence of unreliability sufficient to undermine the "some evidence" standard.

Accordingly, this Court finds that there was more than sufficient evidence to support the DHO finding that Passe had committed the prohibited acts as charged. Passe failed to proffer any sufficiently credible contradictory evidence. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Passe has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding. Accordingly, this habeas petition will be denied for lack of merit.

3.  *The Sanctions Imposed Were Not An Atypical Or Significant Hardship on Petitioner.*

Passe's main challenge involves the nine-year loss of telephone and visitation privileges imposed on the Code 297 violation. He claims the sanction is excessive and constitutes cruel and unusual punishment. Moreover, he contends that Code 297 has been reclassified as a more severe offense in the 100-series violation code, and that the 100-series does not carry such a sanction. Passe also argues that the loss of privileges was a prescribed sanction for his Code 297 violation, but that there was no specific time period for such a sanction, making the BOP Inmate Discipline policy vague and the DHO's decision arbitrary and capricious.

The Government argues that the sanctions as imposed were within the range of sanctions available for the violations of Code 297 and Code 305, and did not impose an atypical or significant hardship on Passe.[2]

---

[2] The Government also argues that the petition should be dismissed for lack of subject matter jurisdiction because Passe was challenging only the loss of privileges sanction, which did not affect the duration of his confinement. While Passe's predominant concern involved the nine-year loss of telephone and visitation privileges, he also was sanctioned with the loss of

13

On October 4, 2006, the Warden at FCI Fort Dix issued a memorandum explaining that inmates found in possession of electronic devices or related equipment, such as cell phones, could be charged with a violation of Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool.  See Moran Decl. at ¶ 4, Ex. 6 (Memorandum for Inmate Population).  Code 100-series offenses are designated the "greatest category" offense, more serious than Code 297, which is a "high category" offense.  Code 100-series offenses typically allow for more severe sanctions than 200-series offenses.  Thus, this Court finds no basis for Passe's unsubstantiated claim that the sanctions received on the Code 297 violation were greater than that prescribed under a 100-series code violation.

Moreover, both Code 297 and Code 305[3] violations allow the DHO to impose a range of sanctions, as set forth in subpart A through M under 28 C.F.R. § 541.13(a)(2).  The loss of privileges is included in this list of sanction in subpart G.  However, there are no time parameters fixed for loss of privileges, making such sanction discretionary.

The DHO determined that a nine-year loss of telephone and visitation privileges was an appropriate sanction:

---

GCT, and he challenged the DHO's decision which found a Code 297 violation.  Therefore, the Court rejects the Government's contention that there is no subject matter jurisdiction over Passe's habeas petition concerning his prison disciplinary proceedings.

[3] Code 305 is a "moderate category" offense.

>meant to demonstrate the seriousness of the offenses to [petitioner] as well as everyone incarcerated at [FCI Fort Dix].  To specifically address the Loss of Visits, although it is not directly related I have determined it is warranted as it is known contraband items are introduced by visitors into correctional institutions and all of the sanctions have proven effective in having individuals modify their behavior to acceptable standards.

(Moran Decl., Ex. 4, Part VI).

In response to Passe's administrative appeal, the Regional Director found that, based on the greater weight of evidence, the DHO's decision to impose sanctions was consistent with the severity level of the violations and in compliance with BOP Program Statement 5270.07, <u>Inmate Discipline</u>, and were not disproportionate to Passe's conduct.  Specifically, the Regional Director stated:

>Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u> states, so that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons (BOP) rules.  Staff shall take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within BOP rules and institution guidelines and to promote a safe and orderly institution environment.  The DHO is specifically authorized to impose sanctions he determines will have a significant impact upon an inmate's future behavior.  The DHO advised you that your behavior demonstrated a disregard for established rules and regulations.  He imposed sanctions to demonstrate to you, and to others, the seriousness of the offense.  Your phone sanction is directly related to your misconduct and the DHO stated a restriction of your visiting privileges is warranted as contraband items have been known to be introduced into the institution through this area.  You have not been restricted from corresponding with your family in writing.  You must consider the consequences of your actions prior to committing a prohibited act.

(Moran Decl., Ex. 2, Part B).

15

This Court finds that the sanctions imposed, including the loss of privileges, are within the range of sanction listed under 28 C.F.R. §541.13(a)(2). Moreover, the loss of privileges sanction do not work an "atypical and significant hardship" on Passe, and do not serve to extend his confinement beyond the expected parameters of his sentence. See Sandin v. Connor, 515 U.S. 472, 484-85 (1995).[4] Consequently, Passe has failed to demonstrate a constitutionally protected liberty interest in the loss of telephone and visitation privileges. He also fails to show that these disciplinary sanctions were arbitrarily applied or are unreasonable. The sanctions are consistent with the applicable regulations, and Passe may freely communicate with family and friends by mail as an alternative to telephone and visitation.

Therefore, Passe's claim challenging the sanctions imposed will be dismissed for lack of merit.

---

[4] Under certain circumstances, liberty interests may arise under the Due Process Clause or by operation of state law or regulations. Sandin, 515 U.S. at 483-84. Sandin also applies to Fifth Amendment claims involving federal prison regulations. Castillo v. FBOP, No. 05-5076, 2006 WL 1764400, *3 (D.N.J. June 23, 2006), aff'd, 221 Fed. Appx. 172 (3d Cir. 2007). Nevertheless, such liberty interests are implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment." Sandin, 515 U.S. at 484-86. Disciplinary action by federal prison officials in response to a wide range of misconduct is not atypical but rather, falls within the expected parameters of a sentence imposed by a court of law. Id. at 485.

16

## **CONCLUSION**

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.


/s/ Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

At Camden, New Jersey
Dated: April 14, 2010